## JOHN BACON et al. v. WILLIAM C. S. VENTRESS.

1. CHANCERY: PLEADING: DEFENCE CANNOT BE RELIED ON UNLESS SET UP IN THE ANSWER.—The defendant cannot, at the hearing, insist on a defence not relied upon in his answer; and, therefore, where a surety was sued, and he relied in his answer upon an absolute discharge of both the principal and himself by a novation of the debt by the principal, he cannot, at the hearing, insist that the facts show a discharge to him, on account of forbearance of suit against the principal without his consent.

2. CONTRACT: NOVATION OF A DEBT: ACCEPTANCE OF AN INSTRUMENT BY PAYEE: PRESUMPTION IN FAVOR OF.—Ventress and his surety were indebted to the Planters' Bank of this State by two promissory notes which were over-due in 1839; the Bank proposed to transfer this with other debts to the trustees of the United States Bank of Pennsylvania, but it being considered doubtful whether, under the Act of 1840, (Hutch. Dig. 325, § 7,) the bank could rightfully make the transfer, the agent of the trustees refused to accept this assignment without the previous assent of the debtors, and their agreement to renew by giving notes payable directly to the trustees; V. agreed to the transfer, upon the condition that in the proposed novation further time of payment was to be allowed; V. accordingly, in August, 1842, immediately after the transfer of his indebtedness, executed his notes in renewal of the old debt, and also a deed of trust to

secure their payment, and sent them to an agent of the trustees, who declined accepting them upon his own responsibility, and retained them for the decision of R., the principal agent, upon his return from a trip on which he was then absent. In October, 1842, R. returned and took possession of the new notes, and in July, 1843, he wrote to V., insisting that he had not, in making the notes and deed of trust, fully complied with the agreement between them, but not expressing any intention not to accept them; also requiring payment according to the *time* specified in the new notes. In 1845, the trustees brought suit against V. on the old notes, and in 1846, a judgment was rendered in favor of the defendant upon his plea in abatement, contesting the right of the bank to transfer the notes; in January, 1850, this judgment was reversed by this court, and the right of the bank to transfer the notes established. In 1849, the agent refused to deliver up the new notes upon the demand of V., but in 1850, after the decision in this court, he sent them to another agent of the trustees to be delivered to V., but the agent dying soon afterwards, they were not delivered. In 1849, a bill in equity was filed to collect the old notes from the surety of V. *Held,* that it was the duty of R., the agent, if he intended to decline accepting the new notes to have notified V. of such intention in a reasonable time; and that his failure to do so, with the other circumstances above set forth, conclusively established an acceptance of the new notes by him; and that, therefore, the old notes were discharged.

APPEAL from the District Chancery Court at Natchez. Hon. B. C. Buckley, vice-chancellor.

This bill was filed in 1849, by the appellants, as trustees of the United States Bank of Pennsylvania against the appellee, to collect from him as one of the sureties of James A. Ventress, the amount of his promissory notes, which they had executed to the Planters' Bank of this State, and which were over due in 1839. The transfer was made by a delivery of the notes to the agent of complainants, and the Planters' Bank was afterwards and before the commencement of this suit, ousted of its corporate franchises by a judgment in a proceeding in the nature of a writ of *quo warranto.* A general demurrer was filed to the bill by the defendant, which, being overruled, he answered.

The defendant, in his answer, stated that in 1842, when the transfer of the notes sued on was proposed by the Planters' Bank to the complainants, that it was doubted whether, under the law of this State, such transfer could be made; and that complainants refused to accept the same, unless with the previous consent of James A. Ventress, who was the principal in the notes, the de-

fendant and the other makers being his sureties. That upon application being made to said James A. Ventress, he agreed to the same, provided that he should have further indulgence in the payment of the debt; that thereupon it was verbally agreed between the said James A. and the agent of complainants, that the said James A. should execute his seven promissory notes falling due at different times, in renewal of said indebtedness, and that he should execute a deed of trust to secure the payment of the same; that soon afterwards said James A. did execute and deliver said notes and deed of trust, which were accepted by the complainants' agent, who has since retained possession of the notes, and refused to deliver them upon the demand of said James A. Ventress. The answer then states as follows:—" This respondent insists that the making and delivery of the said seven promissory notes to the said Roberts was a complete satisfaction of the said transferred notes, and constitute a full and valid defence to the relief prayed for in complainants' said bill of complaint, and he prays that so much of this answer as sets up those grounds of defence, may be held and taken as a plea in bar to the relief sought, as fully as if their matters were formally and technically pleaded."

It appeared from the evidence that the complainants' agent, Roberts, refused to accept of the proposed transfer of debts due to the Planters' Bank, unless the debtors would first agree and consent to the assignment. That he accordingly applied to James A. Ventress, who agreed to the assignment upon the condition that in the new notes to be given he was to have indulgence. An agreement on this subject was made in August, 1842, and thereupon James A. Ventress executed seven promissory notes to be delivered in satisfaction of the notes sued on; the first of these seven notes fell due 1st April, 1843, and the second in April, 1844. These, with a deed of trust executed by James A. Ventress to secure their payment, were, in August, 1842, soon after the transfer, sent to one Henderson, who was also an agent of complainants. Upon the reception of the notes and deed of trust by Henderson, he declined to accept them, on account of some objection urged by him to the deed of trust; he, however, retained the notes for the decision of Roberts, who was the principal agent, and was at that time

absent on a trip to the North. In October of that year, Roberts returned, and got possession of the notes, which had been deposited by Henderson among his valuable papers. Roberts made no communication to Ventress in reference to the notes until June, 1843, when he wrote to him the following letter:—

"NATCHEZ, 6th June, 1843.

"JAS. A. VENTRESS, Esq.—*Dear Sir:* Mr. Henderson handed me some time ago the notes you sent up, with a view to carry out the arrangement you made with me; the notes are not drawn providing for the ten per cent. good funds, which was agreed upon by you. I agreed to take a *pro rata* share with the Comm. Bank here, according to our respective debts, of such security as they were willing to take on what you owed them; the deed was not such as the Comm. Bank would take, and I understand it was returned to you.

"Mr. Henderson tells me, that you left out the par funds, because I stated to you that I would take your debts on as good terms for you, as I did for any one else; and that I have done better for others whom I have not exacted par funds from; you and I agreed about the par funds; but that part in which you state I said I would do as well for you as any body else, was in regard to time, and in that respect I did do better for you; (the) two persons from (whom) I did not require par funds on taking their debts were Mr. Elliott and Mr. Parker. If you allude to my arrangement with Major Feltus, my arrangement with him had nothing to do with others; his was for services rendered, in consideration of assisting me in getting through with my whole business in Woodville, when I was there, and which I could not do without the aid and advice of a friend. I had a letter from Mr. Marshall at the time, to you, as well as to Major Feltus, but you were absent at the time, and afterwards here in Natchez. I thought at the time, and think so still, I made as good an arrangement for you, as I did with any one else. Payments were to be made by you, in one, two, three years and so on, and the first period has passed without payment. Upon reflection, after giving you these particulars, I think you will be willing to admit the advantage of the arrangement to yourself. United States Bank notes are up this season, and Planters' Bank

down, and it is probable they will be nearly the same next season; but I should not be surprised to see Planters' Bank at par before United States; in three years from this time, they will be both at par.   I thought it probable you would have written to (me) earlier, after the period of your first payment expired.   I am now leaving for the North, and hope by the 1st of November, when I return,. that you will make the first payment due last April.

"Very respectfully, &c.,

"J. S. ROBERTS, attorney."

It was also on proof that Roberts at the time he concluded the arrangement with Ventress, in relation to the transfer and novation of the debt due the Planters' Bank, agreed to make as favorable an arrangement with Ventress, as to the settlement of the debt, as he should make with any one else.

In 1845, the complainants sued James A. Ventress, and two of his sureties, (the defendant being a non-resident,) in the Circuit Court of Wilkinson county, on the original notes to the Planters' Bank, and which had been transferred.   The defendant pleaded in abatement, under the Act of 1840, Hutch. Code, 325, § 7, contesting the right of the bank to assign the debt.   Upon this plea in 1846, judgment was rendered for the defendants.   The complainants prosecuted a writ of error from that judgment, and in January, 1850, it was reversed; the act prohibiting the assignment having been declared unconstitutional by the Supreme Court of the United States.   In 1849, James A. Ventress, applied to Roberts for the renewed notes, but Roberts declined to give them up.   It appeared inferentially, as stated in the opinion of the court, that in 1850, after the decision made by this court, overruling the defendant's plea in abatement in the suit at law, Roberts sent the renewed notes to one Davidson, who lived in Woodville, and was the attorney there for complainants, with directions to him to deliver them to James A. Ventress.   Davidson, however, died in that year without making any delivery, and the notes being found among his papers after his death, they were delivered to W. T. Martin, an attorney for complainants; and they were never afterwards delivered up to Ventress.

It was also on proof that Roberts had on several occasions

spoken of the arrangement made by him with Ventress for the novation of the debt, and that he had acknowledged holding the renewed notes under that agreement. Roberts's deposition was taken, in which he denied that he ever accepted the notes in satisfaction of the original debt sued on; but he gave no explanation for his detention of them, and his refusal to deliver them up when demanded in 1849.

The vice-chancellor dismissed the bill, and complainants appealed.

*W. T. Martin*, for appellants,

Filed an elaborate brief, in which he commented on the evidence, and contended that it did not establish an acceptance of the notes by Roberts. He also contended, that under the pleading, the defendant could not rely upon a discharge to him as surety, by reason of any indulgence granted to James A. Ventress.

*Fulton Anderson*, on same side.

*H. F. Simral*, for appellee.

1. The appellee is discharged by reason of the contract made by Roberts to forbear suit. This contract was good and valid. *Rathbone* v. *Warren*, 10 Johns. R. 594; *King* v. *Baldwin*, 17 Ib. 389; 2 Vesey, 543; 2 Brown, Cha. Ca. 579; 2 Paige, R. 499; *People* v. *Jansen*, 7 Johns. R. 332; 2 Sim. & Stuart, Ch. R. 457; 3 Merivale, 272.

2. The exception and detention by Roberts of the notes without notice that he intended not to accept them, amount in law to acceptance, and he is bound by it. *Postmaster General* v. *Norval*, 1 Gil. R. 106; *Bank of United States* v. *Dandridge*, 12 Wheat. 64; *State Bank* v. *Wilson*, 1 Dev. 484; *Althorp* v. *North*, 14 Mass. R. 178. Mr. *Simral* also reviewed the evidence very fully, and contended that it conclusively established the fact that Roberts had accepted the notes, in satisfaction of the old debt.

*W. L. Sharkey*, on same side.

HANDY, J., delivered the opinion of the court.

Bacon et al. *v.* Ventress.

This bill was filed by the appellants to enforce the payment of two promissory notes, made by the appellee as surety for James A. Ventress, and payable to the Planters' Bank of this State, one dated 27th of November, 1838, and due about the 15th of December, 1839, for the sum of $2,500, and the other dated 2d of July, 1839, and due about the 1st of December, 1839, for the sum of $9,600, which notes were transferred by the bank to the appellants, on or about the 25th of March, 1842. The charter of the bank having been declared forfeited by judgment of law, and the notes having been transferred by mere delivery, which did not pass the legal title to the appellants, the appellants had to resort to a court of equity for relief.

The answer sets up several grounds of defence; but the case appears to have turned in the court below upon the defence set up on the following ground.

The answer avers, that the two notes above mentioned were not transferred to the appellants—and that they, through their agent, would not agree to take them from the Planters' Bank, until the consent of James A. Ventress to the transfer was obtained, which consent was given upon condition that Roberts, the agent, would extend the time of payment; and in pursuance of the agreement made between them, James A. Ventress made and delivered to the agent, seven promissory notes for the amount of principal and interest of the two original notes, with interest to the time of maturity of the several notes last made, which notes were also secured by a deed of trust, duly acknowledged and recorded, and this took place about the last of August, 1842; and that these notes remained in the possession of Roberts until after this suit was brought, he claiming title to them and retaining them, although requested by James A. Ventress to deliver them up to him. The answer, then, insists that the making and delivery of the seven promissory notes to Roberts, was a complete satisfaction of the two original notes, and constitutes a full defence to the relief prayed in the bill, and relies upon this as a plea in bar.

On the final hearing, the bill was dismissed; and from that decree, this appeal is prosecuted.

In behalf of the appellee, the decree is attempted to be sus-

tained on the ground that the evidence shows a case of time given by a creditor to a principal, without the knowledge and consent of the surety; and under such circumstances as to discharge the surety. But this is clearly not the character of the defence set up in the answer. It is not alleged that the arrangement between Roberts and James A. Ventress, was made without the knowledge and consent of the surety; nor are the facts set up in the answer, stated in such a manner as to show that the defence was placed on that ground. The obvious purport of the answer, so far as it relates to the new arrangement, is, that the original notes were completely discharged as to both principal and sureties, by the new notes made and delivered to the agent of the appellants. That is the material point in controversy, and its solution depends upon the question whether, under the circumstances as shown by the evidence, the new notes are to be considered as having *been accepted* by the appellant's agent, in consequence of the agreement made between him and James A. Ventress, set up in the answer. We will proceed to consider the evidence with reference to the points of view in which it is insisted that it shows a sufficient acceptance in law and in fact.

The first point of view relied on as showing an acceptance, is the retention of the new notes and deed of trust by Roberts, and his failure to give notice for such a length of time, that the arrangement, as proffered by James A. Ventress, was rejected.

It appears by the evidence, that the new notes and deed of trust were executed in the latter part of August, 1842, and were promptly delivered to Mr. Henderson, who was an agent of the appellants, in connection with Roberts; that Mr. Henderson objected to the form of the deed of trust, but did not object to the notes, and that he declined accepting the security until Roberts, who was then absent at the North, should return; that immediately on receipt of the deed, which was sent to him at Natchez by A. M. Feltus, of Woodville, he wrote to Feltus that he would not take the security, stating his objection to be to the form of the deed of trust. The notes and deed were not then returned to Feltus, but were retained by Henderson, and came to the hands of Roberts on his return to Natchez, in October of that year, having been placed

among his valuable papers by Henderson to await his return.   Roberts states, that the notes came to his hand on his return, but that he found that they did not conform to the agreement between him and James A. Ventress, as they contained no provision for the payment of ten per cent. of the amount of the debt in specie, and no security was provided for such payment, as was agreed upon as part of the terms of the arrangement.   He gave no notice to James A. Ventress, of his non-acceptance of the notes and deed of trust, and did not offer to return them.   He appears to have remained passive in the matter until the 6th of June, 1843, when he addressed Ventress, stating that he had received the notes from Henderson, and that they did not provide for the payment of ten per cent., in good funds, as was agreed on.   He states what he understood the agreement to be, and adverts to the misapprehension under which Ventress had acted in carrying out the arrangement, stating some reasons in support of his view of the agreement.   But there is nothing in the letter to show that he rejected the arrangement, or that he intended by it to give notice to Ventress that he considered the agreement as at an end.   On the contrary, it conveys the idea that, although he was right in his view of the agreement, yet that he merely wished to justify himself in the view he took of the matter, and did not then insist upon it as indispensable to the arrangement, but was willing to acquiesce in it as it stood.

It appears by the testimony of Henderson, that although he wrote to Feltus, who may be considered as Ventress' agent, that he would not accept the deed of trust, yet, upon further examination, he explains, that *he declined to accept the security until Roberts' return.*   His letter to Feltus, therefore, cannot be regarded as an absolute rejection, but the transaction must be considered as left open for final decision until the return of Roberts, and subject to his action.   Else why were the papers kept by Henderson and delivered to Roberts, the chief agent?

It was incumbent, then, on Roberts to give notice to Ventress of his rejection of the arrangement within a reasonable time; and upon his failure to do so, Ventress had the right to treat the arrangement as accepted and concluded.   There is no pretence that he took any step whatever which could amount to notice, until

the 6th June, 1843, which was about eight months after the securities came to his hand, and about ten months after they were delivered to his co-agent. His silence for such a length of time goes strongly to show an acceptance of the arrangement, and to bind his principals to the consequences of it. The law presumes an acceptance from the unreasonable and unaccountable delay, and Ventress and his surety have the right to the benefit of that presumption. *Postmaster General* v. *Norvell,* Gilpin, 106. And that presumption will stand unless clearly rebutted by evidence.

Here the legal presumption is greatly strengthened by facts, showing an acceptance was really intended at the time by Roberts: and this presents the second ground upon which the completion of the new arrangement is alleged to be shown.

As above stated, the letter of Roberts to Ventress does not expressly reject the arrangement, but conveys quite a different idea. After stating his view of the agreement, he concludes the letter by saying : "I thought it probable you would have written to (me) earlier *after the period of your first payment expired.* I am now leaving for the North, and hope by the first November, when I return, that *you will make the first payment due last April.*" These expressions have direct reference to the payment agreed on by the new notes, and are entirely inexplicable except upon the idea that he waived his objections to the new arrangement. He does not say nor intimate, that he would agree to keep the notes and let the arrangement stand, provided Ventress would make provision for the ten per cent. in good funds, which he said was originally agreed to be paid as part of the arrangement. But he retains the notes, and expresses his hope that the first of them, which was then past due, would be paid by Ventress by the 1st of November following. The conclusion would appear to be irresistible from this letter, that although the notes were not in conformity to the agreement, yet, that he waived his objection, and agreed to take them, and urged that payment should be made at a stated time upon the one then past due ; for this demand of the payment of the note is utterly irreconcileable with the hypothesis, that he was not the legal holder of the note, and entitled to receive payment ; and this

could only have arisen from the fact that he had accepted the new arrangement.

This conclusion is corroborated by the testimony of Fielding Davis, who states that Roberts told him repeatedly that he had made arrangements with Ventress for the debt transferred by the Planters' Bank, and *had taken new notes*, giving time, and that the new notes were secured either by a mortgage or a deed of trust, and were taken in renewal of the original notes. These statements were made by Roberts after his return from the North in 1842. He also stated to Davis, shortly after his return from the North, that there was some difficulty between him and Ventress, relative to the amount of par funds which he was to receive in the arrangement.    These conversations took place whilst Davis was acting as agent for Roberts.

Again, the conduct of Roberts shows that he claimed ownership or control of the new notes and mortgage, which could only have been rightfully done by his having accepted the arrangement; and he cannot be permitted to say that he exercised such control without legal right.

He states in his deposition that "*afterwards*," (referring to the date of his letter to Ventress of 6th June, 1843,) " he sent the notes to his attorney, Davidson, of Woodville, requesting him to deliver them to James A. Ventress, as he had not complied with the arrangements agreed upon;" but gives no intimation as to when this was done. But it appears by the deposition of Wm. T. Martin, that Roberts had possession of them in December, 1849, and they must have been sent between that time and the summer of 1850, to Mr. Davidson, who is shown to have died during that summer. What was his reason for retaining the notes for so many years, he does not attempt to show. But it appears, by the record, that suits were brought on the original notes by him in 1845, and that judgment was rendered for the defendants, on the plea that the transfer of the notes by the Planters' Bank was void under the Statute of 1840, prohibiting the transfer of notes and other evidences of debt by the banks of this State.    That case was brought to this court, and was pending until January, 1850, when the judgment was reversed, and the defence relied upon by the defendants overruled.

The circumstances, then, clearly tend to show that it was not until the decision had been made in this court, establishing the title of the present appellants to the original notes received by them from the Planters' Bank, that Roberts disclaimed any interest in or title to the new notes, and then he forwarded them to Davidson to be delivered to Ventress, after having retained them in his possession for about eight years. For what purpose did he keep them for this great length of time? Certainly not without right; for he is precluded from taking such a position, not only by legal principles, but by the fact that when Martin, at the instance of Ventress, called upon him in December, 1849, to release the deed of trust and deliver up the notes, he refused to do so. This conduct is entirely irreconcilable with the hypothesis that he had not accepted the notes; for unless he had accepted them, he had no right to retain them, upon the demand of Ventress. Taken in connection with all the other leading facts of the case,—the reason why he would not take transfers of notes from the Planters' Bank, without the consent of the debtors, fearing the invalidity of such transfers under the Statute of 1840; his desire, for the same reason, to obtain the notes of such debtors payable directly to his principals in discharge of the original notes transferred by the bank, in order to avoid defences which might be set up to the notes given to the bank; the statements in his letter to Ventress, and his admissions to Davis, recognising and admitting his acceptance of the new arrangement; his failure to give notice to Ventress that the arrangement was rejected; and the great length of time for which the notes were retained by him; his refusal to deliver up the notes is conclusive to show that he claimed the right to hold them, and must bind him and his principals to an acceptance of the arrangement by which the original notes were discharged. The circumstances also plainly show that he intended to claim the benefit of the new notes in the event that he could not succeed in recovering judgment upon the original notes; for he retained them until the point which he feared in relation to the original notes had been decided in his favor, and not until then did he take steps to deliver them up. Had the decision been different with respect to the ori-

ginal notes, it is not to be doubted, from his conduct, but that he would have proceeded to enforce the new notes.

In view of all the circumstances of the case, we think that the new notes and deed of trust must be considered as having been accepted by the appellants, and that the prior notes were thereby discharged, and the decree must, therefore, be affirmed.

SMITH, C. J., having been counsel, gave no opinion.